UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| OLIVER AND MONICA CLOUTHIER, individually and on behalf of their children, G.C. and K.F., <br><br>    Plaintiffs, <br><br>    vs. <br><br> METROPOLITAN SCHOOL DISTRICT OF PERRY TOWNSHIP and METROPOLITAN SCHOOL DISTRICT OF PERRY TOWNSHIP BOARD OF EDUCATION,[1] <br><br>    Defendants. | Cause No. 1:17-cv-932-WTL-MPB |

## ENTRY ON PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court on the Plaintiffs' amended motion for preliminary injunction (Dkt. No. 13). The motion is fully briefed and a hearing was held on May 4, 2017. The Court, having considered the written submissions of the parties and the evidence presented at the hearing, now **DENIES** the Plaintiffs' motion for preliminary injunction for the reasons set forth below.

### I. BACKGROUND

This case arises out of the Plaintiffs' desire to pick up their children from school early each day so that one of the children can participate in extra-curricular activities. The Plaintiffs' children, G.C. and K.F., attend Rosa Parks Elementary School, a Perry Township public school.

---

[1] The Defendants identify the proper Defendant entities in this suit as the Perry Township Schools and the Board of Education of the Perry Township Schools rather than the "Metropolitan School District of Perry Township" and the "Metropolitan School District of Perry Township Board of Education." *See* Dkt. No. 15 n.2.

The school has approximately 750 students. Instructional time at the school ends at 3:30 p.m. From 3:30 p.m. to 3:35 p.m., students prepare for dismissal in their classrooms, putting away work, getting their book bags, and putting on their coats. From 3:35 p.m. to 3:40 p.m., the students move from their classrooms to the front of the building if they are walkers or car riders and to the rear of the building if they are bus riders. Beginning at 3:40 p.m., students are dismissed from the school building to their designated transportation: walkers are dismissed to their parent or guardian in the school's reception area when the parent or guardian shows proper identification; car riders are dismissed at the front entrance of the school to waiting vehicles that display approved identification tags; and bus riders are loaded onto buses at the back of the school. On any given day, there are approximately five to ten walkers, 100 to 110 car riders, and 635 bus riders.

The school implemented a new dismissal procedure, effective October 2015. Students are not to be dismissed from 3:00 p.m. to 3:40 p.m. Students may be dismissed prior to 3:00 p.m. or at 3:40 p.m., the normal dismissal time. Car riders are to be picked up in the car rider line. They are not to be picked up in the school's reception area and then walked to cars parked on the street or in the school's front parking lot. The revised dismissal policy was developed following an incident at a different school in which the school's principal was killed by a school bus during dismissal. The Defendants state that the dismissal procedure was developed "for the safety of all Rosa Parks Elementary students and families, to ensure that all students are in the correct location at dismissal at the end of the day, and to ensure that the school office operates effectively during dismissal." Dkt. No. 15-2 at 3.

From the time the policy went into effect until the end of the 2015-2016 school year, the school granted the Plaintiffs an exception. The Plaintiffs were allowed to pick up their children

2

between 3:00 p.m. and 3:40 p.m. in the school's reception area and then walk to their car, which was parked in the school's front parking lot. They were also allowed to move to the front of the car line on the days they picked their children up at the normal dismissal time.

Prior to the start of the 2016-2017 school year, the school principal, David Henriott, contacted Mr. Clouthier to tell him that he would not be granted the same exception for the 2016-2017 school year. The Plaintiffs did not abide by the school's policy. Instead, until December 2016, they continued to pick up their children between 3:00 p.m. and 3:40 p.m. and otherwise pick up their children in the school's reception area when they were designated as car riders.

During that time, school personnel repeatedly asked that the Plaintiffs pick up the children outside of the 3:00 p.m. to 3:40 p.m. window and to otherwise comply with the dismissal policy, but they did not stop the Plaintiffs from picking up their children if they came during that time or if they came to the office rather than waiting in the car line. Finally, in January 2016, the school stopped allowing the Plaintiffs any exceptions to the dismissal policy.

The Plaintiffs bring this action, claiming violations of the Indiana Constitution and the Fourteenth Amendment to the United States Constitution and a claim for intentional infliction of emotional distress.[2] They seek to enjoin the Defendants from "refusing to release [their children from school] when requested by the Clouthiers." Dkt. No. 13 at 1. "Three days per week, the Clouthiers are asking to pick the children up at 3:30 p.m. in order for G.C. to get to gymnastics in time. Two days per week, the Clouthiers are asking to pick the children up right at dismissal

---

[2] The Plaintiffs also assert a separate claim for "violation of 42 U.S.C. § 1983." Dkt. No. 1 at 4. There is, however, no such claim. Section 1983 cannot be violated. Rather, the statute "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 358 (1990) (Stevens, J.). The federal rights referred to by Justice Stevens are those "secured by the [federal] Constitution and laws." 42 U.S.C. § 1983. The Plaintiffs allege an unspecified violation of the Fourteenth Amendment. Section 1983 creates a remedy for violations of the Fourteenth Amendment.

from the door rather than in the car line, as neighborhood walkers would do." Dkt. No. 16 at 1. On at least one of those two days, G.C. has tutoring for dyslexia.[3]

## II. STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and emphasis omitted). In weighing whether to grant a preliminary injunction, the district court must "'estimate the likelihood that the plaintiff will prevail in a full trial and which of the parties is likely to be harmed more by a ruling, granting or denying a preliminary injunction, in favor of the other party.'" *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 738 F.3d 786, 795 (7th Cir. 2013).

The Supreme Court has reduced the preliminary injunction analysis to four requirements. To be entitled to a preliminary injunction, the movant must establish: (a) likely success on the merits; (b) irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in the movants favor; and, (d) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "If the court determines that the moving party has failed to demonstrate any one of these [ ] threshold requirements, it must deny the injunction." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citation omitted).

---

[3] The Plaintiffs also seek to enjoin the Defendants from "complaining to [Plaintiff] Mr. Clouthiers' work about his actions as a parent." Dkt. No. 13 at 1. Mr. Clouthier works as a patrol officer for the Indianapolis Metropolitan Police Department ("IMPD"), and the school corporation's director of security called the IMPD on one occasion after a parent made a complaint to school personnel about Mr. Clouthier. The Plaintiffs, however, do not assert a claim for which such an injunction would be an appropriate remedy.

## III. DISCUSSION

The threshold, and ultimately dispositive issue, before the Court is whether the Plaintiffs have satisfied their burden of demonstrating that a preliminary injunction is appropriate because they have a likelihood of success on their federal constitutional claim.[4] As for the Plaintiffs' claim arising under the U.S. Constitution, they do not assert that the Defendants' dismissal policy itself is unconstitutional.[5] Rather, they contend that the school routinely allows exceptions to the dismissal procedures and argue that the central question in this case "is whether the School has a rational basis for not excepting the Clouthier family from the dismissal procedure based on their families' needs when the School excepts other families from the procedures in similar circumstances." Dkt. No. 16 at 4. Thus, although they do not identify it as such, the Plaintiffs present a class-of-one equal protection claim. The Court now examines whether the Plaintiffs have established likely success on the merits of such a claim.

"A class-of-one equal protection claim is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). As the Seventh Circuit explained in *Moore*:

> To be considered "similarly situated," the class-of-one challenger and his comparators must be "*prima facie* identical in all relevant respects or directly comparable . . . in all material respects." *Racine Charter One, Inc. v. Racine*

---

[4] The Court notes that the Plaintiffs have not identified the source of their claim under the Indiana Constitution. As a result, the Court cannot examine the Plaintiffs' likelihood of success on the merits of a claim based on the Indiana Constitution.

[5] Even if they had challenged the policy's constitutionality, that claim would fail. The Defendants asserted that the policy is designed to ensure student, staff, and family safety, avoid students being in the wrong location at dismissal time, and increase efficiency in the school's office. The Plaintiffs fail to demonstrate that these are not legitimate interests of the school or that the dismissal policy lacks a rational relationship to these interests.

5

>   *Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (internal citation and quotations omitted); *see also Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Although this is not a "precise formula," it is nonetheless "clear that similarly situated individuals must be very similar indeed." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).

*Moore*, 543 F.3d at 896-97.

The Defendants claim that they no longer grant exceptions like the one that they allowed for the Plaintiffs. The Defendants noted, however, that "there are some occasions, when students, through unavoidable circumstances, need to be dismissed from the school between 3:00 p.m. and 3:40 p.m." Dkt. No. 15 at 5 (citing Dkt. No. 15-2 at 2). The Defendants provide the following examples: "if a parent is contacted to pick up a student who is sick, or if a parent who arranged to pick up a student before 3:00 p.m. is delayed in traffic, the parent may be allowed to pick up the student between 3:00 p.m. and the end-of-day dismissal." *Id.* (citing Dkt. No. 15-2 at 2-3). At the hearing, Henriott also described an exception the Defendants make for a particular student with autism. The student is dismissed early on the days that he has difficulty following directions. Henriott also testified that there is no one who is exempted from the dismissal policy every day of the school year, which is the exception sought by the Plaintiffs.

At the hearing, the Plaintiffs presented evidence that the Defendants have allowed exceptions to other individuals on more than one occasion and that exceptions occur daily. They also presented video evidence of dismissals of other students occurring after 3:00 p.m. but before 3:40 p.m. These examples, however, showed only special circumstances: teachers walking to the parking lot with their children who attend school at Rosa Parks Elementary and a dismissal that Henriott described as an exception because of one of the special circumstances he had described previously. The Plaintiffs did not present evidence of the Defendants allowing anyone the type of exception that they seek: an exemption from the normal dismissal process five days a week for

the duration of the school year. Therefore, the Plaintiffs have not identified any similarly situated individuals. Given that they have not identified any similarly situated individuals, there is no likelihood that the Plaintiffs would succeed on the merits of their constitutional claim. Accordingly, the Court denies the Plaintiffs' request for preliminary injunction.

SO ORDERED: 5/10/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification